IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| BRUCE KENYON; FRANK ANDRADE; and TIMOTHY SCANLON, | ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | No. 25-cv-351-JJM-AEM |
| U.S. DEPARTMENT OF JUSTICE; U.S. OFFICE OF JUSTICE PROGRAMS; and ASSISTANT A.G. BRENT J. COHEN, *in his Official Capacity*, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

|  |  |  |
|---|---|---|
| BRUCE L. KENYON; FRANK ANDRAD; HELBERTH PEREZ; JEREMY BEAUSOLEIL; CHRISTOPHER L. SMITH; TIMOTHY SCANLON; WOLF PAWOCHAWOG-MEQUINOSH; JOSE LANTIGUA; DAVID J. GIRARD; CHARLES MITCHELL; JOSEPH MEDEIROS; JESSE PERRY; GUISEPPE PIRRI; JACOB HARDIN; RICARDO HERNANDEZ; MIGUEL MONTERO; JOSHUA RATHBUN; MYQUL MONTI; CRAIG PREUIT; and GEORGE TABORA,[1] | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 25-cv-521-JJM-PAS |
|  | ) | |

---

[1] The Defendants reported to the Court that Plaintiff George Tabora died on March 6, 2026.  ECF No. 48.

K. JOSEPH SHEKARCHI;[2]             )
VALARIE J. LAWSON; SHELDON         )
WHITEHOUSE; and SETH               )
MAGAZINER,                         )
     Defendants.                )
_____  )

## ORDER

The Plaintiffs are a group of state prisoners,[3] proceeding *pro se* and challenging the facial constitutionality and implementation of Rhode Island's sex offender registration scheme, R.I. Gen. Laws § 11-37-8.2.1(b)-(b)(2) (the "Jessica Lunsford provisions") and R.I. Gen. Laws § 11-37.1-6 (authorizing the labeling of an individual as a "sexually violent predator" that imposes certain constraints). The requirements on post-custody registration may be imposed for the offender's lifetime. R.I. Gen. Laws § 11-37.1-4(b) and (c).

The thrust of the Plaintiffs' challenge is that the statutory scheme fails to consider the circumstances of individual offenders and the characteristics of the crimes they committed. A second theme is that the underlying assumption of the registration requirement and behavior restrictions is that the individuals cannot exercise impulse control and modify their behavior, in which case, the Plaintiffs reason, they are not sane and competent enough to be prosecuted criminally; conversely, if they are deemed sane and competent enough to be prosecuted

---

[2] K. Joseph Shekarchi resigned as Speaker of the Rhode Island House of Representatives and was replaced by Christopher R. Blazejewski. But because the Plaintiffs alleged actions by former Speaker Shekarchi individually, the Court is not substituting Speaker Blazejewski now.

[3] The original Plaintiffs numbered nine. The Amended Complaint was brought on behalf of 20.

criminally, they are able to exercise impulse control and do not need the strictures imposed on them by the registration scheme.  They note that the federal law that underlies the state scheme, 18 U.S.C. § 4247(a)(6), is directed at "sexually dangerous person[s]" who are defined as those who "suffer[s] from a serious mental illness, abnormality or disorder as a result of which [they] would have serious difficulty in refraining from sexually violent conduct."  ECF No. 1-1 at 17.  There is far more alleged in a lengthy, somewhat difficult to follow Amended Complaint – including a theory that the statutes at issue deny them the opportunity to meaningfully assert viable mental health-based defenses[4] – but the relationship between the sex offender scheme and mental illness seems to be at the heart of the allegations.

They cite an array of injuries, starting with "more than a decade of wrongful incarceration," and including "reputational destruction, economic deprivation and psychological trauma."  ECF No. 30 at 4.

This is the fourth action brought by inmate Bruce Kenyon raising a challenge to the same statutory scheme. *Kenyon v. United States*, No. 24-cv-306-WES-PAS was dismissed because the Complaint violated the requirement of Fed. R. Civ. P. 8(a) that it contain a "short and plain" statement of the claim.  *Kenyon v. United States*, No. 25-cv-209-JJM-PAS was dismissed for the same reason and for want of standing since the vast majority of the Plaintiffs are still incarcerated and therefore under no

---

[4] The Amended Complaint introduces a novel argument based on the Sixth Amendment to the United States Constitution, which guarantees the right to present a defense in a criminal prosecution.  According to the Amended Complaint, the sex offender scheme "impairs defense counsel from presenting viable trial strategies," ECF No. 1-1 at 24, thus violating the Constitution.

duty to register.[5] *Kenyon v. United States Dep't of Justice*, No. 25-cv-351-JJM-AEM is in a somewhat strange posture. It was consolidated with this case, but it was independently dismissed shortly thereafter, for want of standing and failure to state a claim. ECF No. 17. Despite the directive to file all papers in this case (*Kenyon v. Shekarchi*), the Plaintiffs have continued to file Motions in 25-cv-351-JJM-AEM (e.g., Motion to Clarify, ECF 19, Motion to Preserve Separate Adjudication, etc., ECF No. 21 and others). They have also asked to be relieved from the judgment in No. 25-cv-351-JJM-AEM (ECF No. 26) or to have the judgment altered. ECF No. 25.

The Plaintiffs have not taken to heart everything from this Court's previous declarations about their attempts to avoid application to them of Rhode Island's sex offender registration scheme. This Amended Complaint is another lengthy (54-page) document that reads similarly to the previous ones and creates the same Rule 8(a) issue by throwing a kitchen sink of legal theories against the statutes. Even more to the point, the Amended Complaint indicates all but one is still in custody, therefore they are still not required to register. That fact creates the same standing issue that was already decided against them at least with respect to the requirement to register and adhere to the conditions outlined in the statute.

---

[5] All but one Plaintiff has given the Court addresses at the Adult Correctional Institutions, Department of Corrections, in Cranston, Rhode Island. Plaintiff Jeremy Beausoleil has given an address in Indiana, but the Amended Complaint maintains he is a resident of Rhode Island. (ECF No. 30 at ¶ 71. There is no section of the Amended Complaint that really describes the 20 Plaintiffs. Person-specific facts are discussed for nine of the Plaintiffs at ECF 30 at ¶ 18-39, simply asserting in conclusory terms that those Plaintiffs were subject to registration and suffered injury.

The Amended Complaint has a new, insurmountable obstacle: it sues two state legislators and two members of Rhode Island's congressional delegation because they voted for legislation that imposed on Rhode Island (or induced with the carrot of federal funds) the sex offender registration construct. K. Joseph Shekarchi, then-Speaker of Rhode Island's House of Representatives, is sued because the Speaker has oversight of all House proceedings, including the advancement of bills like R.I. Gen. Laws § 11-37.1-2(L). He exercised "administrative authority over the routing and advancement of legislation." ECF No. 30 at ¶ 109.[6] *Id.* Valerie Lawson, President of the Rhode Island Senate, is sued because she "controlled committee referrals and floor calendars ..." *Id.* United States Senator Sheldon Whitehouse is sued, as is Congressman Seth M. Magaziner, because of their participation in passing H.R. 4472 which, the Amended Complaint alleges, funded the registration mechanism that effectuated the federal Sex Offender Registration and Notification Act ("SORNA"), and Title I of the Adam Walsh Child Protection and Safety Act of 2006, 34 U.S.C. § 20901. The Amended Complaint accuses both of a variety of activities undertaken as legislators to help in moving federal funding to Rhode Island.

The connection here between federal and state Defendants is that SORNA distributes federal funds to jurisdictions that establish and maintain sex offender registries under SORNA guidelines. 34 U.S.C. § 20912(a) and (b). It is SORNA that

---

[6] The Amended Complaint details a series of legislative actions attendant to Mr. Shekarchi's oversight and alleged help he rendered to advance the bill. *See* Complaint, ECF 30, ¶ 110.

suggests tiers of registration and specifies the durational period.  34 U.S.C. § 20915.

Funds are supplied through federal grants and failure to comply can result in loss of

or reduction in federal funds.  Godin, "The New Scarlet Letter:  Are We Taking the

Sex Offender Label Too Far?" 60-DEC R.I.B.J. 17 (Nov./Dec. 2011).  Rhode Island

enacted a sex offender registry construct in response to the federal legislation and

accepts funding for it.  The state Defendants here are sued for their actions in

establishing what is alleged to be an unconstitutional scheme; the federal Defendants

are sued for inducing the state to do that by holding out federal funding as a carrot

and for dictating requirements that the Plaintiffs allege are unconstitutional.

The Court need go no further than legislative immunity and dismisses the case

based on that defense, granting Motions to Dismiss.  ECF Nos 34 and 36.[7]

---

[7] Were there no legislative immunity, the Plaintiffs would have to successfully overcome the claim preclusion doctrine of *Heck v. Humphrey,* 512 U.S. 477 (1994). *Heck* held that a civil lawsuit is an impermissible method of collaterally attacking criminal convictions.  *Id.* at 486-87.  Any action that calls into question the integrity of a conviction *or sentence* is prohibited unless the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Id.* at 487.  Later, that condition precedent was softened in a way not relevant here by the holding of *Thompson v. Clark,* 596 U.S. 36, 49 (2022), that a plaintiff must show only that the criminal prosecution ended in a favorable way, without a conviction.  The Plaintiffs seek to avoid *Heck* by asserting that they do not seek to vacate their convictions.  ECF No. 30 at 12.  But declaring it does not make it so.  First, *Heck* applies to claims for monetary damages, and the Plaintiffs seek $10 million apiece.  ECF No. 30 at 5.  Second, even though *Heck* applies to claims for monetary damages and does not preclude actions for prospective relief only, *Olivier v. City of Brandon,* 607 U.S. ___, 146 S. Ct. 916 (Mar. 20, 2026), it applies to actions "challeng[ing] the validity of a prior conviction or sentence so as to obtain release from custody or money damages."  *Id.* at 920.  The Plaintiffs directly assert that their incarcerations are "unlawful."  ECF No. 30 at 4.  The sex offender designation is a direct consequence of convictions and, by statute, part of the sentence.  Monitoring is imposed by statute "as a condition of parole and

*Legislative Immunity*

Legislative immunity is absolute, and it attaches to local, state, and federal legislators. *Acevedo -Cordero v. Cordero-Santiago*, 958 F.2d 20, 22-23 (1st Cir. 1992). It serves the purpose of "help[ing] guarantee that legislators are free to legislate, unfettered by fear of constituents' lawsuits." *Id.* at 22. Immunity is a complete bar to liability. Whether legislative immunity applies turns on the nature of the act. *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (even though the Mayor is an executive official, the act of introducing and signing ordinances was legislative). Accord *Carlow v. Mruk*, 425 F. Supp. 2d 225, 234 (D.R.I. 2006), adopted No. 04-cv-325S, ECF No. 23 (3/28/06).

The Plaintiffs break down the Defendants' actions to try to establish that they were "administrative" not "legislative." They claim the activities fell into the "implementation" or "enforcement" category (that has an executive "ring" to it) and were therefore not legislative. The Plaintiffs simply declare conclusory allegations of

---

probation." R.I. Gen. Laws § 11-37-8.2(b). In *Olivier,* an important factual circumstance differentiating that plaintiff's situation from a *Heck* scenario was that *Olivier's* request for remedy implicated *only* prospective application of the statute; he "did not seek in his § 1983 suit to upset that conviction, *or even to avert its collateral effects." Olivier,* 146 S. Ct. at 923 (emphasis supplied). Here, the Plaintiffs precisely seek that.

The Plaintiffs proffer a theory that because they are attacking the structure of the sex offender scheme, they are not really challenging their individual convictions or sentences. ECF No. 30 at 12. But that strikes the Court as too facile. For example, a death row inmate person who challenges the death penalty system-wide is, in the process, attacking his own sentence and terms of incarceration.

"administrative enforcement," citing *Gravel v. United States*, 408 U.S. 606, 625 (1972).[8]

The specific acts that the Plaintiffs claim make the Defendants civilly liable for application of the sex offender registry to them are:

- directing "committees and agencies to implement [the Act]"
- "supervising compliance" through federal mandates
- "maintaining and reenacting [SORNA]"
- "overseeing the statutory classification system"
- "ensuring continued enforcement through budgetary, administrative and supervisory actions."

ECF No. 30 at 12-13.

These acts are ancillary to the passage of legislation, or they are part of the mandate of the Act. In other words, it is the Act itself that, by law, consigns enforcement and the task of ensuring compliance to the executive agencies that oversee it. Nowhere are the state Defendants tasked with accomplishing those activities.

As for the federal Defendants, other than voting for the legislation, which is beyond dispute a legislative activity, there are no alleged actions of Senator Whitehouse or Congressman Magaziner that in any way could be considered their personal participation in the mandated enforcement activities that by virtue of

---

[8] *Gravel* is inapposite here as far as it held that an alleged arrangement made by a United States Senator with a private publisher for publication of classified documents was *not* within legislative activity. *Id.* at 622. *Gravel is* useful, however, for its declaration that participation in committee hearings and other non-voting actions that are "an integral part of the deliberative and communicative processes . . . with respect to the consideration and passage or rejection of proposed legislation" are shielded from liability. *Id.* at 625.

separation of powers are consigned to the Executive Branch. And on the face of it, reenacting SORNA, and passing budgetary legislation dedicating funds to states that comply with SORNA are integral parts of lawmaking. Those legislators who voted for the legislation are no more responsible for "overseeing" it than they are for making sure that the Fair Housing Act is complied with.

State lawmakers are sued on the theory that by accepting federal funds and complying with SORNA by passing state laws establishing a registry and mandating adherence to the federal requirements, they are themselves carrying out unconstitutional procedures. But voting for legislation and enacting budget plans are quintessentially legislative activities. *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 8 (1st Cir. 2000). Generally, the hallmark of legislative action is that it accomplishes generalizations concerning policy or the state of affairs. *Id.* at 9. Decisions that stem from specific facts about individuals or situations are more likely to be deemed administrative. *Id.* For example, *Bogan* itself upheld as legislative the preparation of a budget calling for elimination of a position, because while there was a person occupying that position, the elimination of the person's department was an "integral step in the legislative process" that had implications beyond the position's then-current occupant and was therefore generalized. 523 U.S. at 55. Similarly, while in *Carlow v. Mruk*, the action of the Town Meeting Moderator that was challenged was targeted at a particular person speaking out of turn – as the legislative acts here target the group to which the Plaintiffs belong – but as an adopted Rule prohibiting nonresidents from speaking, the Moderator's enforcement reflected a general policy

9

beyond the specific facts of that individual and thus was legislative activity entitled to absolute immunity. *Carlow v. Mruk*, 425 F. Supp. 2d 225, 237 (D.R.I. 2006), adopted No. 04-cv-325S, ECF No. 23 (3/28/06). The same rationale led the First Circuit to conclude that the decision of the New Hampshire General Assembly Speaker of the House in prohibiting remote voting during the COVID-19 pandemic was a legislative act establishing a general rule, not a determination of the rights of specific individuals based on specific situational facts. *Cushing v. Packard*, 30 F.4th 27, 49 (1st Cir. 2022).

In this case, all the activities assertedly performed by all four legislative Defendants were legislative in nature and absolute immunity attached to them. The wisdom and, indeed, even the lawfulness of the legislation does not affect that immunity. "Legislative activities otherwise entitled to immunity in a § 1983 suit do not lose the full protection of that immunity merely because plaintiffs allege that such activities violate their constitutional rights." *Figueroa-Serrano v. Ramos-Alverio*, 221 F.3d 1, 4 (1st Cir. 2000). So long as an activity occurred within "the sphere of legitimate legislative activity," liability for it is barred. *Id.* at 4.

The Plaintiffs are clearly sincere in their belief that the statutes they challenge are unconstitutional, and there is no doubt in the Court's mind that being subject to the sex offender registration scheme is a substantial burden. But the Plaintiffs have

10

not, in their four lawsuits, been able to mount a challenge that survives long enough to get to the merits.[9]

## Conclusion

In *Kenyon v. Shekarchi*, No. 25-cv-521-JJM, the Court GRANTS the Motions to Dismiss (ECF Nos. 10, 27, 34, and 36) and this case is DISMISSED.   The Court DENIES AS MOOT all the remaining motions in 25-cv-521-JJM:

- Motion to Transfer Venue to The District of Columbia Pursuant to 28 U.S.C : 1404(a) (ECF No. 8);
- Motion to Compel Discovery or Preserve Jury Trial Rights Prior to Amendment (ECF No. 9);
- Motion to Preserve the Integrity of the Record and Notify the Court of Potential Judicial Misconduct (ECF No. 11);
- Motion to Update Record (ECF No. 13);
- Motion to Compel Targeted Discovery re: Plaintiffs' Right to Amend and Demand Discovery (ECF No. 14);
- Motion to Preserve Jury Trial Rights (ECF No. 16); and
- Motion to Clarify Fact-Finding Standard and Preserve Right to Jury Trial (ECF No. 19).

In *Kenyon v. DOJ*, 25-cv-351-JJM, the Court DENIES the Motions to Alter Judgment and for Relief from Judgment.  ECF Nos. 25 and 26.  The Court DENIES as moot the Motions to Preserve Integrity of Record and to Compel Targeted Discovery.  ECF Nos. 24 and 27.

In addition, the Plaintiffs, individually and as a group, are barred from filing *pro se* while they are incarcerated any further civil lawsuits aimed at invalidating the sex offender registration scheme without leave of the Court.

---

[9] In the two cases that were consolidated, Nos. 25-cv-351-JJM and 25-cv-521-JJM, there are a slew of pending Motions.  This Order will terminate them all.

11

IT IS SO ORDERED:

*s/John J. McConnell, Jr.*

_____

John J. McConnell, Jr.,
Chief Judge
United States District Court


May 15, 2026